In the Matter of HARRY SILVER, an Attorney, Respondent.

First Department, October 9, 1931.

*Einar Chrystie*, for the petitioner.

*George Gordon Battle* of counsel [*Battle, Levy, Vantine & Fowler*, attorneys], for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York in November, 1924, at a term of the Appellate Division of the Supreme Court, First Department. The petition herein charges him with professional misconduct in that (1) he converted to his own use a sum of money given him by a client for the purpose of settling a claim, and falsely represented to his client that the claim had been settled; (2) he was guilty of abuse of process as an attorney at law.

The respondent appeared and answered, denying both charges. The matter was referred to an official referee and the latter has duly reported, finding the respondent guilty as charged. The matter is now before this court upon a motion by the petitioner for such action as the court may deem just and proper.

With respect to the first charge, it appears that in 1925 Anthony Sozio retained the respondent to act as his attorney in the matter of a claim made against him by one Rothstein for damages incurred as the result of an automobile accident. Thereafter the respondent

reported to Sozio that he had arranged a settlement of the claim for twenty-five dollars, and Sozio paid the respondent the sum of thirty-seven dollars and fifty cents to cover the amount of the settlement and the fee of the respondent for services in the matter. On July 18, 1925, the respondent gave Sozio a statement in writing upon the back of one of his business cards, of which the following is a copy:

" July 18, 1925.  Re: *Rothstein* v. *Sozio.*

" This case is closed between the attorneys and Anthony Sozio is released.

" (Signed)  HARRY SILVER."

About six months after Sozio had paid the respondent the thirty-seven dollars and fifty cents, Rothstein brought an action against him to recover damages arising out of the aforesaid automobile accident, and Sozio then learned that the respondent had not paid any part of the money delivered to him for that purpose. Thereafter Sozio settled the claim by the payment of one hundred and fifty dollars.

The respondent denied that the thirty-seven dollars and fifty cents had been received by him for the purpose of settling the claim, but testified it was received as a retainer on account of his fees for services, and that when a settlement was effected of the action of Rothstein v. Sozio, the respondent contributed thereto the sum of thirty-seven dollars and fifty cents. The foregoing testimony obviously is not in accord with the probabilities viewed in the light of the claim of the respondent that the thirty-seven dollars and fifty cents was received in payment of services and in the light of the undisputed fact that two weeks after receiving the thirty-seven dollars and fifty cents the respondent billed Sozio for thirty dollars for services rendered.

In connection with this charge, the respondent was also charged further with having induced Sozio not to appear before the grievance committee of the Bar Association by paying him twenty-five dollars in cash and giving him a promissory note for a like amount. Upon his appearance before the committee he denied that he had made any settlement with Sozio or that any settlement had been made on his behalf. When a photograph of the promissory note was shown him, he stated to the committee that the note was not in his handwriting and that he knew nothing about it. The respondent subsequently admitted the payment of fifty dollars to Sozio and that his statements to the grievance committee were false, except that he denied the payment was made for the purpose of inducing Sozio not to appear before the committee. His explana-

tion was that the fifty dollars was paid because Sozio had charged him with negligence in handling the Rothstein case. His explanation of his false statements is that he was disturbed and frightened by the charges against him.

The learned referee has reported as follows: " The respondent made a most unfavorable impression upon me. It was with great difficulty that direct answers could be extracted from him. His equivocations, endless in number, his refusal to answer directly a multitude of relevant questions, and his downright false statements, as subsequently proved, often from his own testimony, caused me to reach the conclusion that he was not to be believed under oath. When the conduct of an attorney is under consideration he owes, first to the Grievance Committee and then to the Referee appointed to take the evidence, frankness, honesty and sincerity. These requirements are missing in this case. He aggravated the original charge by his useless equivocations and his downright false statements. I find the first charge fully proved."

The record amply sustains this finding and the criticism of the learned referee.

With respect to the second charge, it appears that prior to October 15, 1928, one Charles Schindleheim settled a claim made against him by Samuel Silver, the respondent's father, by payment of the sum of $1,426 and the return of certain merchandise previously purchased from said Silver. On October 30, 1928, the respondent personally served a summons on Schindleheim in an action brought in the Municipal Court, Manhattan, First District, in which the father of the respondent, Samuel Silver, was named as plaintiff, and Charles Schindleheim and Samuel Baron, copartners, trading as Schindleheim & Baron, were named as defendants. The summons demanded judgment for the sum of $263.45 and interest from October 5, 1928, claimed to be due for goods sold and delivered by the plaintiff to the defendants. The respondent was named as attorney for the plaintiff therein. Thereafter the defendant Schindleheim went to the office of the clerk of the court prepared to file his answer to the claim made against him in said summons, and was advised that the summons in the action had not been filed and that, therefore, no answer could be received or filed.

On December 10, 1928, a similar summons was served by respondent on Schindleheim. Again the defendant Schindleheim attempted to file his answer and was advised by the clerk that the summons had not been filed.

On February 2, 1929, a third summons in all respects the same except that it was entitled in an action in the third district, was

served by the respondent upon Schindleheim, with a like result when Schindleheim attempted to file his answer.

Concededly no steps were ever taken to bring any of the aforesaid three actions on for trial or to collect the $263.45 alleged to be due the father of the respondent.

The respondent sought to excuse his failure to file the first two summonses by placing the blame upon his younger brother who is alleged to have acted as his clerk. This brother was not produced as a witness. The respondent further testified that his failure to file the summonses was because he did not attend to the Schindleheim matter personally as he was not at the office owing to the death of a sister. It was subsequently shown that this sister did not die until August of the following year. This is but an additional illustration of the deliberate fabrications in the testimony of the respondent in his endeavor to explain his actions with respect to this charge.

The deliberate perjury by the respondent in denying under oath the issuance of the promissory note as part payment to the complainant alone stamps the respondent as unfit.

The respondent is not worthy to remain a member of an honorable profession and should be disbarred.

McAvoy, Martin, O'Malley and Townley, JJ., concur.

Respondent disbarred.